UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KHALIQ BRYANT, | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:22-CV-0252-B |
| | § | |
| DITECH FINANCIAL, LLC, | § | |
| | § | |
| Defendant. | § | |
| | § | |
| SPECIALIZED LOAN SERVICING, LLC | § | |
| As Successor in Interest to DITECH | § | |
| FINANCIAL, LLC, | § | |
| | § | |
| Third-Party Plaintiff/Counter-Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES M. DAUGHERTY, | § | |
| | § | |
| Third-Party Defendant. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Third-Party Plaintiff/Counter-Plaintiff Specialized Loan Servicing, LLC, as successor in interest to Ditech Financial, LLC ("SLS")'s Motion for Summary Judgment (Doc. 78). For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion for Summary Judgment. The Court **DISMISSES** Plaintiff Khaliq Bryant's quiet title claim. SLS's declaratory judgment counterclaim will proceed to trial.

# I.

# BACKGROUND

This is a dispute over real property located in Dallas County, Texas ("the Property"). James Daugherty acquired the Property on April 17, 2002. Doc. 55, Third Am. Compl. ¶ 4(a). That same day, Daugherty executed a deed of trust in favor of Allstate Bank. *Id.* ¶ 4(b). Daugherty refinanced the Property on December 8, 2003, and executed a promissory note (the "Alpha Note") secured by a deed of trust in favor of Alpha Bank. *Id.* ¶ 4(c). Daugherty eventually fell delinquent on his monthly payments. On November 14, 2012, Daugherty entered into a loan modification agreement with Ocwen Loan Servicing, LLC ("Ocwen")—a successor in interest to Alpha Bank—to extend the Alpha Note's maturity date. *See* Doc. 79, Br. Mot. ¶ 7. The modification agreement reflected a balance of $238,400.83 then-owed on the note. Doc. 80-1, App. Mot., Ex. B-9, 51. Despite the modification, Daugherty again fell behind on payments, and Ocwen sent a notice of default on February 19, 2015. *See id.*, Ex. B-10, 63–65.

On May 15, 2015, Ocwen informed Daugherty that the Alpha Note was now accelerated, with all unpaid principal and interest due immediately. *Id.*, Ex. C-1, 113. While records indicate that Daugherty made a one-time payment of $10,223.74 toward the balance of the note in February 2016, *see id.*, Ex. B-11, 88, he did not otherwise attempt to cure his default.

Daugherty also defaulted on certain homeowners' association assessments to which the Property was subject. As a result, the homeowners' association foreclosed on its assessment lien, and the Property passed to Sherry Flewellen through a lien sale on June 10, 2016, for $24,500. *See id.*, Ex. C-2, 115–16. After Flewellen also failed to pay homeowners' association assessments, the Property was sold by the homeowners' association at auction for $77,000 in July 2021 to "Kingdom

Group Investments, Inc." *See id.*, Ex. K, 289. Finally, after a series of additional transfers, Bryant purchased an interest in the property on December 6, 2021, for an unknown price. *Id.* Ex. N, 330.

Through a complicated but well-documented chain of title, various mortgage servicers obtained beneficial interest in the Alpha Note by assignment from 2003 to 2019. Relevant here, Ocwen obtained the Alpha Note in May 2013, *see id.*, Ex. B-6, 45, and assigned its interest to Defendant Ditech Financial, LLC ("Ditech") in October 2018, *id.*, Ex. B-7, 47. Ditech attempted to initiate a foreclosure sale of the Property in December 2018. *See* Doc. 88, Resp., Ex. 2. But because Flewellen—then an interest-holder in the Property—obtained a temporary restraining order ("TRO") in Texas state court, the foreclosure sale did not take place. Doc. 80-1, App. Mot., Ex. C-3, 123–24. This first TRO, though initially fourteen days in length, was extended to last 34 days in total. Order Extending TRO, *Sherry Flewellen v. Ditech Fin, LLC*, No. DC-18-17938 (298th Dist. Ct., Dallas County, Tex. Dec. 13, 2018). Flewellen nonsuited her first case on February 1, 2019, *id.*, Ex. C-4, 126, just ten days before Ditech filed for Chapter 11 Bankruptcy. Doc. 79, Br. Mot. ¶ 44. But Flewellen filed a second lawsuit against Ditech in May 2019, bringing a variety of claims related to the Alpha Note and obtaining another fourteen-day TRO to again prevent Ditech from initiating a foreclosure sale. Doc. 80-1, App. Mot., Ex. C-5, 128–40. Through joint stipulation of the parties, Flewellen's second lawsuit was dismissed without prejudice on December 9, 2019. *Id.*, Ex. I, 282–83. On December 13, 2019, Ditech exited bankruptcy, and SLS obtained Ditech's interest in the Alpha Note. *See id.*, Ex. B-8, 49.

Initially, SLS continued its predecessors' efforts to foreclose, announcing a foreclosure sale in April 2020. Doc. 88, Resp., Ex. 5. But SLS's foreclosure sale never transpired,[1] and in an apparent effort to restart the foreclosure process, SLS served a notice of rescission of acceleration at the Property on April 15, 2021. Doc. 80-1, App. Mot., Ex. C-6, 143. Then, on May 21, 2021, SLS served notice at the Property of default and SLS's intent to accelerate the Alpha Note. *Id.*, Ex. B-12, 91–98. This was followed by a notice of acceleration on July 5, 2021. *Id.*, Ex. C-7, 146.

Bryant filed this lawsuit on January 12, 2022, in Texas state court. *See* Doc. 1-1, Ex. B-1, Original Pet. Bryant's sole cause of action is a quiet title claim, asserting that Ditech's—and now SLS's—lien is invalid because the statute of limitations for foreclosure has expired. *See id.*; Doc. 55, Third Am. Compl. SLS, as Ditech's successor in interest, removed the case to federal court on February 2, 2022. *See* Doc. 1, Notice. On September 3, 2024, SLS filed its Second Amended Counterclaim and Third-Party Complaint, joining and asserting breach of contract claims against Daugherty as Third-Party Defendant, and seeking a declaratory judgment from this Court that it may proceed with a non-judicial foreclosure sale of the Property. *See* Doc. 64, Second Am. Countercl. Third-Party Compl. ¶¶ 16–20.

Now, SLS moves for summary judgment against Bryant. SLS moves the Court to dismiss Bryant's quiet title claim with prejudice and to enter a declaratory judgment that SLS may proceed with non-judicial foreclosure. *See generally* Doc. 78, Mot. Summ. J.

---

[1] The record does not reflect why this foreclosure did not take place, but it was likely impacted by the COVID-19 pandemic, or a related moratorium on foreclosures as discussed below.

## II.

## LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted). On a motion for summary judgment, the burden is on the movant to prove that no genuine dispute exists as to any issue of material fact. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). To determine whether a genuine dispute exists for trial, the court must view all evidence in the light most favorable to the non-movant. *See Chaplin v. Nations Credit Corp.*, 307 F.3d 368, 371–72 (5th Cir. 2002).

If the non-movant bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. *Latimer v. SmithKline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). Rather, the movant may satisfy its burden by pointing to the absence of evidence to support the non-movant's case. *Id.*; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Once the movant has met its burden, the burden shifts to the non-movant, who must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' . . . or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) (other citations omitted). A non-moving party with the burden of proof must "identify specific evidence in the record and

articulate the manner in which that evidence supports that party's claim," *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (citation omitted), and "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita*, 475 U.S. at 587 (emphasis in original) (quoting FED R. CIV. P. 56(e)). Finally, the evidence that any party proffers "must be competent and admissible at trial." *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

## III.

## ANALYSIS

The Court first addresses SLS's argument for dismissing Bryant's quiet title claim, then turns to SLS's argument for declaratory relief permitting it to process with non-judicial foreclosure.

A. *There is No Genuine Dispute that the Record Evidence is Insufficient to Support Bryant's Quiet Title Claim.*

In Texas, to succeed on a claim to quiet title, a plaintiff must show (1) that he has an interest in the specific property, (2) that his title to the property is affected by a claim of the defendant, and (3) that the defendant's claim, although facially valid, is invalid or unenforceable. *McKinney Ave. Props. No. 2, Ltd. v. Branch Bank & Tr. Co.*, No. 05-14-00206-CV, 2015 WL 3549877, at *7 (Tex. App.—Dallas June 5, 2015, no pet.) (citing *Vernon v. Perrien*, 390 S.W.3d 47, 61 (Tex. App.—El Paso 2012, pet. denied)). "The plaintiff bears the burden to prove its superior equity and right to relief, and it is not enough to attack the weakness of the defendant's title." *Suniverse, LLC v. Universal Am. Mortgage Co., LLC*, No. 09-19-00090-CV, 2021 WL 632603, at *12 (Tex. App.—Beaumont Feb. 18, 2021, pet. denied) (citations omitted). A "prerequisite to [a plaintiff's] claim of [quiet] title is the tender of whatever amount is owed on the note." *Id.*

SLS argues as a threshold matter that Bryant cannot sue to quiet title where he has not first paid the full amount owed under the Alpha Note. Doc. 79, Br. Mot. ¶ 36. In support, SLS cites *Willoughby v. Jones*, 251 S.W.2d 508, 510 (Tex. 1952) and *Fillion v. David Silvers Co.*, 709 S.W.2d 240, 246 (Tex. App.—Houston 1986, pet. ref'd n.r.e.) ("[A] necessary prerequisite to the . . . recovery of title . . . is tender of whatever amount is owed on the note."). Bryant points out that neither case involved an action to quiet title and summarily concludes from this that tender is not required for claims to quiet title or "where the claim is that the interest of the adverse party is invalid or void." Doc. 88, Resp., 6.

However, *Suniverse*—which did involve a claim to quiet title—is instructive. In that case, the Texas Court of Appeals found that because a plaintiff did not dispute or even argue that it or its predecessors tendered the funds necessary to cure the default under a note, a quiet title claim as to that note was insufficient as a matter of law. 2021 WL 632603, at *13. Much like Bryant's claim here, the plaintiff in *Suniverse* brought a claim to quiet title against various mortgagees and mortgage servicers, asserting that their interests in the plaintiff's property were invalid and time-barred. *See id.* at *2. In response, the current noteholder defendants moved for summary judgment, arguing that "because [the plaintiff] had not tendered the amount owed on the loan, it could not maintain a quiet title claim." *Id.* at *4. The court agreed in full, finding tender to be a prerequisite to bringing a quiet title claim under Texas law. *Id.* at *12.

On examination of the record and evidence submitted, the Court agrees with SLS that Bryant "does not allege that he tendered, or ever attempted to tender, the full amount owed on the Note." Doc. 79, Br. Mot. ¶ 36. Bryant's opposition brief argues that tender is "just not an issue in this case" and fails to raise any evidence that he tendered the full amount owed on the Note. *See*

Doc. 88, Resp., 6. Moreover, while neither party proffers the price Bryant actually paid for his interest in the Property, that same interest was purchased for a sum of $77,000 only six months earlier. *See* Doc. 80-1, App. Mot., Ex. K, 289. The full amount owed on the Alpha Note would have been significantly greater. *See* Doc. 80, Ex. B-9, 51 (reflecting an outstanding balance on the Alpha Note of $238,400.83 in 2012). SLS has pointed to an absence of evidence that Bryant tendered the full amount owed on the Alpha Note, and Bryant has failed to respond with any specific evidence of that fact, which is a prerequisite to a valid claim of quiet title. *See Suniverse*, 2021 WL 632603, at *12. Accordingly, the Court grants SLS summary judgment on Bryant's Quiet Title Claim and dismisses it with prejudice.

  B.  *There is a Genuine Dispute as to whether SLS's Foreclosure Action is Time-Barred.*

  SLS asserts that it has met its prima facie case for non-judicial foreclosure. "In Texas, to foreclose under a security instrument with a power of sale, the lender is required to show that: (1) a debt exists; (2) the debt is secured by a lien created under Texas law; (3) the borrower is in default under the note and security instrument; and (4) the borrower has been properly served with notice of default and acceleration." *Wells Fargo Bank, Nat'l Ass'n as Tr. for Option One Mortg. Loan Tr., 2007-5, Asset-Backed Certificates, Series 2007-5 v. Pierce*, No. 3:22-CV-2139-E, 2024 WL 4008771, at *4 (N.D. Tex. Aug. 12, 2024) (Horan, Mag. J.) (citation omitted), *report and recommendation adopted*, No. 3:22-CV-2139-E, 2024 WL 4009947 (N.D. Tex. Aug. 29, 2024) (Brown, J.). The Alpha Note creates a valid debt, that debt was secured by a deed of trust that encumbers the Property, Daugherty defaulted on that debt, and Ocwen served proper notice of default and acceleration on Daugherty at that time. Doc. 79, Br. Mot. ¶ 62. Bryant does not dispute that these elements are all established. *See generally* Doc. 88, Resp.

Instead, Bryant claims that SLS's foreclosure action is time-barred by the applicable statute of limitations. *See id.* at 6–8. "A statute of limitations defense is an affirmative defense." *Paetz v. United States*, 795 F.2d 1533, 1536 (11th Cir. 1986). Under the Rule 56 summary judgment standard, "it is not the burden of the moving party to specifically negate any and all affirmative defenses that the non-moving party might have set forth in an Answer." *Days Inn Worldwide, Inc. v. Khan Grp., LLC*, No. CIV. 11-4575 KM, 2014 WL 956105, at *5 (D.N.J. Mar. 12, 2014). "Rather, it is the non-moving party's burden to set forth specific facts, through competent evidence, suggesting that a dispute of material fact exists with respect to a claim or defense." *Id.*

In Texas, a mortgagee seeking to foreclose on a mortgage must do so within four years of the date on which the foreclosure action accrued—normally the date on which the note matured or was accelerated. Tex. Civ. Prac. & Rem. Code § 16.035(a); *see HSBC Bank USA, N.A. as Tr. for Merrill Lynch Mortg. Loan v. Crum*, 907 F.3d 199, 203 (5th Cir. 2018). "When this four-year period expires, the real-property lien and the power of sale to enforce the lien become void." *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 567 (Tex. 2001) (citing Tex. Civ. Prac. & Rem. Code § 16.035(d)). "Effective acceleration requires two acts: (1) a notice of intent to accelerate, and (2) a notice of acceleration." *Id.* at 566 (citation omitted).

The Parties agree that the Alpha Note was first accelerated on May 15, 2015, when SLS's predecessor in interest, then Ocwen, sent Daugherty a Notice of Acceleration of Loan Maturity. *See* Doc. 79, Br. Mot. ¶ 8; Doc. 88, Resp., 3. Thus, Bryant—as the non-moving party asserting an affirmative defense—has set forth specific, uncontested facts to support his assertion that absent intervening events, the foreclosure action was time-barred as of May 15, 2019. *See Days Inn*, 2014 WL 956105, at *5. SLS must show that despite the asserted statute of limitations and material facts

presented, its action is not time-barred, and no genuine issues of material fact exist. *See Provident Life & Accident Ins. Co.*, 274 F.3d at 991.

To argue that the four-year period has not run, SLS points to several "clock-restarters" and "clock-pausers." SLS argues that the statute of limitations clock reset at various points when the loan's accelerated status was rescinded (or "abandoned"). SLS also argues that the clock paused during a number of events between 2015 and 2024 that effectively tolled the statute of limitations. Several "restarts" and "pauses" attributed to equitable tolling, abandonment, or a combination of the two, would thereby have extended the applicable statute of limitations and made SLS's foreclosure action timely. Bryant concedes that the clock would have restarted when acceleration was abandoned in 2021, *see* Doc. 88, Resp., 1–2, but argues that time had already run out before then, because SLS's other abandonment and equitable tolling arguments fail.

The Court now examines the proffered sources of "restarts" and "pauses." The issues can be simplified as follows: All agree the clock initially started on May 15, 2015. Within the four years of that point, does SLS show that, as matter of undisputed material fact, its predecessors in interest reset the clock by abandoning acceleration? And if not, does SLS show that, as a matter of undisputed material fact, there were enough pauses to make it to April 15, 2021—the next point at which the clock could arguably have restarted?[2]

---

[2] The Court finds April 15, 2021, to be the earliest undisputed date of abandonment, when SLS sent a notice of rescission. Bryant does not dispute whether the notice was sent or if it constituted abandonment and concedes that a subsequent May 21, 2021, notice of default constituted abandonment. *See* Doc. 88, Resp., 1–2.

1. <u>SLS cannot show that, as a matter of undisputed material fact, its predecessors restarted the clock by abandoning acceleration prior to May 15, 2019.</u>

"[I]f foreclosure was triggered by accelerating a lien . . . , acceleration can be abandoned." *Jorrie v. Bank of N.Y. Mellon Tr. Co., N.A.*, 740 Fed. App'x 809, 813 (5th Cir. 2018). "Abandonment resets the statute of limitations clock by restoring the contract to its original condition and restoring the note's original maturity date." *Id.* (internal quotation marks omitted). "Even when a noteholder has accelerated a note upon default, the holder can abandon acceleration if the holder continues to accept payments without exacting any remedies available to it upon declared maturity." *Wolf*, 44 S.W.3d at 566–67 (citations omitted); *see City Nat'l Bank of Corpus Christi v. Pope*, 260 S.W. 903, 905 (Tex. App.—San Antonio 1924, no writ) (abandoning acceleration where the noteholder accepted a delinquent borrower's irregular payments and withheld affirmative action "such as placing the note in the hands of attorneys for collection, or bringing suit thereon").

According to SLS, on February 16, 2016, less than a year after the initial acceleration date, Daugherty made a payment of $10,223.74. SLS contests that Ocwen, its predecessor in interest, accepted this payment, thereby rescinding acceleration, restoring the original maturity date, and resetting the applicable statute of limitations. Doc. 79, Br. Mot. ¶ 52. If abandonment took place in 2016, tolling would not be necessary, as it occurred well before the initial May 2019 deadline. In support of this supposition, SLS provides a "Customer Account Activity Statement" which purportedly shows the Alpha Loan's payment history from February 2016 through November 2019. *See* Doc. 80, App., Ex. B-11, 69–88. While, as Bryant argues, the document is not intuitive, it does reflect a $10,223.74 payment received and credited to the Loan on February 23, 2016. *Id.* at 88. Bryant critiques the document as "sketchy," *see* Doc. 88, Resp., 11, but this is insufficient to create a dispute of material fact. Once the movant has met its burden, the burden shifts to the non-movant,

who must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' . . . or by only a 'scintilla' of evidence. . . ." *Id.* (quoting *Matsushita Elec.*, 475 U.S. 574, 586 (1986)) (other citations omitted). "[A] party opposing a properly supported motion for summary judgment . . . must set forth *specific facts* showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation mark omitted) (emphasis added).

Though SLS may have established that payment was made, evidence of payment is not alone a sufficient basis for abandonment. *Wolf* requires both the acceptance of payment and that the noteholder stop "exacting any remedies available to it upon declared maturity." *Wolf*, 44 S.W.3d at 566–67. Thus, if a noteholder continues to attempt collections, or institutes foreclosure proceedings as if the loan were still accelerated, a payment received will not constitute abandonment. *See Pope*, 260 S.W. at 905 (finding a noteholder does not abandon acceleration if it continues to engage in "affirmative action" or exacts "the penalties available to it in case of declared maturity"). Here, despite Daugherty's purported payment in 2016, and no record of any new notice of default or acceleration, Ditech attempted to proceed with foreclosure in December 2018, and SLS attempted to proceed with foreclosure in April 2020. *See* Doc. 88, Resp., Exs. 2 & 5. In fact, Ditech's 2018 notice of foreclosure explicitly referenced the prior default and acceleration. *Id.*, Ex. 2. Because SLS and its predecessors-in-interest continued to engage in affirmative efforts to collect on the defaulted Alpha Note, despite no evidence of a new notice of default or acceleration, the record reflects that acceleration was not abandoned in 2016. The clock therefore did not reset to prevent SLS's foreclosure action from becoming time-barred on May 15, 2019.

> 2. <u>SLS cannot show, as a matter of undisputed material fact, that the statute of limitations was sufficiently tolled to reach the next conceivable date of abandonment.</u>
>
> i. *The Court does not need to determine whether § 16.035 permits equitable tolling at this stage.*

As a threshold matter, Bryant argues that equitable tolling should not generally apply to SLS's foreclosure action. Doc. 88, Resp., 9-10. The Texas foreclosure statute is clear that the "running of the statute of limitations is not suspended against a bona fide purchaser for value" if they lacked notice of the suspension of the limitations period and acquired their interest in the property after the foreclosure action had already accrued for more than four years. § 16.035(c).[3] Bryant claims that, under governing Texas law, equitable tolling must be construed narrowly and is unavailable when inconsistent with the relevant statute. *See, e.g., Levinson Alcoser Assocs., L.P. v. El Pistolon II, Ltd.*, 670 S.W.3d 622, 627 (Tex. 2023) (citation omitted). SLS responds that § 16.035's tolling of limitations only applies to "bona fide purchasers," *see* § 16.035(c), which Bryant cannot be because he had constructive notice of SLS's claim prior to purchasing an interest in the Property. Doc. 89, Reply ¶¶ 5-6. The Court will assume without deciding that § 16.035 does not bar tolling here because it finds that SLS otherwise fails to demonstrate sufficient tolling on the undisputed material facts presented.

> ii. *The Alpha Note's earliest conceivable date of abandonment was April 15, 2021.*

If Ocwen did not abandon acceleration in February 2016, SLS points to a Notice of Rescission of Acceleration of Loan Maturity (the "Notice of Rescission") that it served on the Property on April 15, 2021. Doc. 79, Br. Mot. ¶ 53. A lender may abandon acceleration "by sending a written notice of rescission through certified mail." *PHH Mortg. Corp. v. Aston as Tr. for Polo Meadow*

---

[3] The statute provides limited exceptions in cases of death or where there is a recorded extension of the property lien, neither of which is relevant here.

*Tr.*, No. 01-21-00057-CV, 2022 WL 3363196, at *3 (Tex. App.—Houston [1st Dist.] Aug. 16, 2022, pet. denied). Bryant does not dispute whether SLS sent the Notice of Rescission and expressly concedes that SLS abandoned acceleration by sending a subsequent May 21, 2021, notice of default. *See* Doc. 88, Resp., 1–2. As such, SLS's additional arguments for post-May 2021 abandonment need not be considered or addressed here, and the Court finds that as a matter of undisputed fact, the Notice of Rescission effectively abandoned acceleration on April 15, 2021. If SLS, as the moving party, can show that as a matter of undisputed material fact the statute of limitations was tolled up to April 15, 2021, its foreclosure claim is not time-barred.

   iii. *There are genuine disputes of material fact as to whether SLS is entitled to sufficient tolling to maintain a ripe foreclosure action.*

As noted above, the Parties agree that Ocwen first accelerated the Alpha Note on May 15, 2015, when it sent Daugherty a notice of acceleration. *See* Doc. 79, Br. Mot. ¶ 8; Doc. 88, Resp., 3. Absent intervening events, the foreclosure action would thus have been time-barred as of May 15, 2019—701 days before SLS's Notice of Rescission.

Equitable tolling doctrine provides that "[w]here a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the time during which he is thus prevented should not be counted against him in determining whether limitations have barred his right." *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 157 (Tex. 1991) (citations and internal quotation marks omitted). SLS seeks broad application of this doctrine, identifying four sources of purported tolling of the statute of limitations between May 15, 2015, and April 15, 2021:

- First, on May 29, 2015, 14 days after initial acceleration, in connection with a Presidential major disaster declaration, the Federal Emergency Management Agency issued a moratorium in several Texas counties (the "FEMA Moratorium"), including

    Dallas County, where the Property was located. According to SLS, the FEMA Moratorium prohibited Ocwen from initiating foreclosure on the Property for 91 days, until the hold was lifted on August 28, 2015. Doc. 79, Br. Mot. ¶ 41.

- Second, on two separate occasions, Flewellen obtained temporary restraining orders, preventing Ditech from initiating foreclosure proceedings. The first TRO was entered on November 30, 2018, and was extended up to January 2, 2019, thereby in effect for a total of 34 days. Doc. 79, Br. Mot. ¶ 14; Order Extending TRO, *Sherry Flewellen v. Ditech Fin, LLC*, No. DC-18-17938 (298th Dist. Ct., Dallas County, Tex. Dec. 13, 2018). The second TRO was entered on June 4, 2019, and expired on June 18, 2019, for a total of 14 days. Doc. 80, App., Ex. C-5, 140. Together, the two TROs precluded SLS's predecessor from initiating foreclosure on the Property for a total of 48 days. Doc. 79, Br. Mot. ¶ 43.

- Third, Ditech filed for Chapter 11 Bankruptcy on February 11, 2019, resulting in a bankruptcy stay (the "Bankruptcy Stay"). According to SLS, the Bankruptcy Stay precluded Ditech from foreclosing on the Property until they came out of bankruptcy on December 13, 2019, totaling 305 days (and at which point SLS took possession of the Alpha Note). Doc. 79, Br. Mot. ¶¶ 44–45. Alternatively, SLS claims that a related federal district court stay order (the "District Court Stay") issued by then-Chief Judge Barbara M. G. Lynn in the second Flewellen action also prohibited Ditech from foreclosing on the Property due to the pending bankruptcy. *Id.* ¶ 44. Judge Lynn entered the District Court Stay on June 21, 2019. *Id.* Ditech and

- Flewellen voluntarily nonsuited the case on December 10, 2019. *Id.* The District Court stay was thus in effect for 172 days. *Id.* ¶ 45.

- Fourth, the Coronavirus Aid, Relief, and Economic Security Act prevented foreclosure on the Property from March 18, 2020, to July 31, 2021, for a total of 500 days (the "CARES Act Moratorium"). *See* Doc. 80, App. Mot., Ex. L, 294, 323.

In response, Bryant concedes that the two TROs effectively tolled the statute of limitations, but only for 42 days. Doc. 88, Resp., 8. Bryant challenges all other asserted bases for equitable tolling. Bryant argues that any equitable tolling attributed to the FEMA and CARES Act moratoriums is not supported by existing authority, and that the CARES Act is irrelevant insofar as it came into effect after expiration of the original statute of limitations—even when applying TRO-related tolling. *Id.* Bryant also contends that the Bankruptcy Stay is inapplicable here, as bankruptcy stays only preclude actions brought "against the debtor, not by the debtor." *Id.* Moreover, Bryant notes that the Bankruptcy Stay order expressly authorized Ditech to continue to conduct foreclosures. *Id.* As for the District Court Stay, Bryant does not express whether it precluded foreclosure but notes that Judge Lynn's order did not preclude Flewellen from continuing to pursue her wrongful foreclosure claim under Texas Property Code § 51.002. *See id.* at 4. In summary, Bryant would toll 42 days, attributed to the two TROs, with the statute of limitations thereby expiring on June 26, 2019.

In short, the Parties agree that the two TROs tolled limitations, although they disagree on the number of days. *See id.* (Bryant claiming 42 days); Doc. 79, Br. Mot. ¶ 43 (SLS claiming 48 days). The Parties dispute whether the CARES Act, the FEMA Moratorium, the Bankruptcy Stay, and the District Court Stay also provided bases for equitable tolling—that is, whether those events precluded

SLS and its predecessors from "exercising [their] legal remedy," such that they are entitled to equitable tolling. *Hughes*, 821 S.W.2d at 157.

The Court need not consider each of these arguments because the Court's findings regarding the Bankruptcy Stay and District Court Stay are dispositive. Even assuming, as SLS claims, that the FEMA Moratorium prevented foreclosure and thereby tolled the statute of limitations 91 days, and that the TROs likewise tolled the statute of limitations 48 days, without tolling attributed to either the Bankruptcy Stay or the District Court Stay, the statute of limitations would have expired on <u>October 1, 2019</u>, months before the CARES Act Moratorium took effect.[4] SLS's tolling argument cannot entitle it to summary judgment if there is a genuine dispute of material fact as to whether the bankruptcy-related stays precluded foreclosure.

"The automatic stay of the Bankruptcy Code extends only to actions '"against the debtor."'" *Matter of U.S. Abatement Corp.*, 39 F.3d 563, 568 (5th Cir. 1994) (citing 11 U.S.C. § 362(a)). Claims asserted by a debtor are not subject to the automatic stay because they are not actions "against the debtor." *First Wis. Nat'l Bank of Milwaukee v. Grandlich Dev. Corp.*, 565 F.2d 879, 880 (5th Cir. 1978); *accord Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1205 (3d Cir. 1991); *Martin–Trigona v. Champion Fed. Sav. & Loan*, 892 F.2d 575, 577 (7th Cir. 1989). SLS claims that Ditech was precluded from proceeding with foreclosure of the Property for 305 days due to Ditech's own bankruptcy. *See* Doc. 79, Br. Mot. ¶¶ 44–45. SLS fails to explain how, in light of the Fifth Circuit's precedent and § 362(a) itself, the Bankruptcy Stay prevented Ditech from foreclosing on the Property. *See U.S.*

---

[4] The October 1, 2019, expiration date assumes acceleration started on May 15, 2015, with 91 days of tolling during the FEMA Moratorium and 48 days of tolling for the two TROs. The Court assumes without deciding in SLS's favor on those two sources of tolling only to demonstrate that even by the moving party's more favorable tolling calculations, its argument rises and falls on whether the bankruptcy-related stays precluded foreclosure.

*Abatement Corp.*, 39 F.3d at 568. Moreover, the Bankruptcy Stay Order expressly permitted Ditech to continue engaging "in nonperforming loan servicing activities with respect to Agency Loans, including . . . to conduct foreclosures . . . ." Doc. 80-1, App. Mot., Ex. G, 253.

Alternatively, SLS claims Ditech was precluded from foreclosing on the Property for 172 days due the District Court Stay, Doc. 79, Br. Mot. ¶ 45, which Judge Lynn entered "pursuant to" the Bankruptcy Stay, Doc. 80-1, App. Mot., Ex. H, 280. However, SLS fails to explain why the District Court Stay was any more restrictive of Ditech's ability to foreclose than the Bankruptcy Stay. The record indicates that the District Court Stay's scope was based entirely on the scope of the Bankruptcy Stay. Ditech's notice of bankruptcy—filed with the district court and prompting the District Court Stay—expressly invoked the Bankruptcy Stay and noted that permitted "defenses, claims, and counter-claims" as defined by the Bankruptcy Stay Order were not subject to the stay. *Id.*, Ex. G, 194. And because the Bankruptcy Stay permitted certain claims brought against Ditech but related to Ditech's foreclosure actions, *id.* at 260, Ditech stipulated that Flewellen's wrongful foreclosure claim was permitted and could proceed, while her claims related to negligence, breach of contract, attorney fees, or money damages could not. *See id.*, Ex. G, 194. The district court agreed, staying all but Flewellen's foreclosure-related claim. *Id.*, Ex. H, 280. In short, there is no indication that the District Court Stay was more restrictive than the Bankruptcy Stay, or that it precluded Ditech from bringing a foreclosure action.

There are genuine disputes of material fact as to whether the Bankruptcy Stay or District Court Order prevented Ditech from proceeding with non-judicial foreclosure and thereby could form a basis for tolling. Even assuming SLS's other tolling arguments are correct, the statute of

limitations would have expired in September 2019. Therefore, SLS is not entitled to judgment as a matter of law.

## IV.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion for Summary Judgment (Doc. 78). The Court **GRANTS** summary judgment for SLS on Bryant's quiet title claim and **DISMISSES** that claim **WITH PREJUDICE**. The Court **DENIES** summary judgment for SLS on its request for declaratory judgment that it may proceed with non-judicial foreclosure.

**SO ORDERED**.

**SIGNED: September 3, 2025**.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE