UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KHALIQ BRYANT, | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:22-CV-0252-B |
| | § | |
| DITECH FINANCIAL, LLC, | § | |
| | § | |
| | § | |
| Defendant. | § | |
| | § | |
| SPECIALIZED LOAN SERVICING, LLC | § | |
| As Successor in Interest to DITECH | § | |
| FINANCIAL, LLC, | § | |
| | § | |
| Third-Party Plaintiff/Counter-Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| JAMES M. DAUGHERTY, | § | |
| | § | |
| Third-Party Defendant. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

On October 16, 2025, the Court entered notice of its intent to grant summary judgment in favor of Counter-Defendant Khaliq Bryant and Third-Party Defendant James M. Daugherty (collectively "Counter-Defendants") on Counter-Plaintiff Specialized Loan Servicing, LLC ("SLS")'s declaratory judgment and non-judicial foreclosure claim ("Foreclosure Claim") pursuant to Federal Rule of Civil Procedure 56(f) (the "56(f) Notice"). Doc. 101, Notice, 1. SLS responded to the 56(f) Notice on October 22, 2025. *See* Doc. 102, Resp. Notice. Having reviewed the record, and SLS's response to the 56(f) Notice, the Court finds that based on material facts that are not genuinely in

dispute, SLS is not entitled to judgment as a matter of law on its Foreclosure Claim. Accordingly, the Court **GRANTS** summary judgment for Counter-Defendants on SLS's Foreclosure Claim.

## I.

## BACKGROUND

This is a dispute over real property located in Dallas County, Texas ("the Property"). Daugherty acquired the Property on April 17, 2002. Doc. 55, Third Am. Compl. ¶ 4(a). That same day, Daugherty executed a deed of trust in favor of Allstate Bank. *Id.* ¶ 4(b). Daugherty refinanced the Property on December 8, 2003, and executed a promissory note (the "Alpha Note") secured by a deed of trust in favor of Alpha Bank. *Id.* ¶ 4(c). Daugherty eventually fell delinquent on his monthly payments. On November 14, 2012, Daugherty entered into a loan modification agreement with Ocwen Loan Servicing, LLC ("Ocwen")—a successor in interest to Alpha Bank—to extend the Alpha Note's maturity date. *See* Doc. 79, Br. Mot. ¶ 7. The modification agreement reflected a balance of $238,400.83 then-owed on the note. Doc. 80-1, App. Mot., Ex. B-9, 51. Despite the modification, Daugherty again fell behind on payments, and Ocwen sent a notice of default on February 19, 2015. *See id.*, Ex. B-10, 63–65.

On May 15, 2015, Ocwen sent a notice of acceleration, informing Daugherty that the Alpha Note was now accelerated, with all unpaid principal and interest due immediately. *Id.*, Ex. C-1, 113. While records indicate that Daugherty made a one-time payment of $10,223.74 toward the balance of the note in February 2016, *see id.*, Ex. B-11, 88, he did not otherwise attempt to cure his default.

Daugherty also defaulted on certain homeowners' association assessments to which the Property was subject. As a result, the homeowners' association foreclosed on its assessment lien, and the Property passed to Sherry Flewellen through a lien sale on June 10, 2016, for $24,500. *See id.*,

Ex. C-2, 115–16. After Flewellen also failed to pay homeowners' association assessments, the Property was sold by the homeowners' association at auction for $77,000 in July 2021 to "Kingdom Group Investments, Inc." *See id.*, Ex. K, 289. Finally, after a series of additional transfers, Bryant purchased an interest in the property on December 6, 2021, for an unknown price. *Id.* Ex. N, 330.

Through a complicated but well-documented chain of title, various mortgage servicers obtained beneficial interest in the Alpha Note by assignment from 2003 to 2019. Relevant here, Ocwen obtained the Alpha Note in May 2013, *see id.*, Ex. B-6, 45, and assigned its interest to Defendant Ditech Financial, LLC ("Ditech") in October 2018, *id.*, Ex. B-7, 47. Ditech attempted to initiate a foreclosure sale of the Property in December 2018. *See* Doc. 88, Resp., Ex. 2. But because Flewellen—then an interest-holder in the Property—obtained a temporary restraining order ("TRO") in Texas state court, the foreclosure sale did not take place. Doc. 80-1, App. Mot., Ex. C-3, 123–24. This first TRO, though initially fourteen days in length, was extended to last 34 days in total. Order Extending TRO, *Sherry Flewellen v. Ditech Fin, LLC*, No. DC-18-17938 (298th Dist. Ct., Dallas County, Tex. Dec. 13, 2018). Flewellen nonsuited her first case on February 1, 2019, Doc. 80-1, App. Mot., Ex. C-4, 126, just ten days before Ditech filed for Chapter 11 Bankruptcy. Doc. 79, Br. Mot. ¶ 44. But Flewellen filed a second lawsuit against Ditech in May 2019, bringing a variety of claims related to the Alpha Note and obtaining another fourteen-day TRO to again prevent Ditech from initiating a foreclosure sale. Doc. 80-1, App. Mot., Ex. C-5, 128–40. Through joint stipulation of the parties, Flewellen's second lawsuit was dismissed without prejudice on December 9, 2019. *Id.*, Ex. I, 282–83.  On December 13, 2019, Ditech exited bankruptcy, and SLS obtained Ditech's interest in the Alpha Note. *See id.*, Ex. B-8, 49.

Initially, SLS continued its predecessors' efforts to foreclose, announcing a foreclosure sale in April 2020. Doc. 88, Resp., Ex. 5. But SLS's foreclosure sale never transpired,[1] and in an apparent effort to restart the foreclosure process, SLS served a notice of rescission of acceleration at the Property on April 15, 2021. Doc. 80-1, App. Mot., Ex. C-6, 143. Then, on May 21, 2021, SLS served notice at the Property of default and SLS's intent to accelerate the Alpha Note. *Id.*, Ex. B-12, 91–98. This was followed by a notice of acceleration on July 5, 2021. *Id.*, Ex. C-7, 146.

Bryant filed this lawsuit on January 12, 2022, in Texas state court. *See* Doc. 1-1, Ex. B-1, Original Pet. Bryant's sole cause of action is a quiet title claim, asserting that Ditech's—and now SLS's—lien is invalid because the statute of limitations for foreclosure has expired. *See id.*; Doc. 55, Third Am. Compl. SLS, as Ditech's successor in interest, removed the case to federal court on February 2, 2022. *See* Doc. 1, Notice. On September 3, 2024, SLS filed its Second Amended Counterclaim and Third-Party Complaint, joining and asserting breach of contract claims against Daugherty as Third-Party Defendant, and seeking a declaratory judgment from this Court that it may proceed with a non-judicial foreclosure sale of the Property. *See* Doc. 64, Second Am. Countercl. Third-Party Compl. ¶¶ 16–20.

In March 2025, SLS filed a motion for summary judgment, seeking dismissal of Bryant's quiet title claim and that the Court grant its request for declaratory judgment that it could proceed with foreclosure. Doc. 78, Mot. Summ. J., 1. The Court ruled on that motion in September 2025 ("MSJ Order"). *See generally* Doc. 91, Mem. Op. While the Court dismissed Bryant's quiet title claim, it also held that SLS was not entitled to summary judgment on its Foreclosure Claim as a matter of

---

[1] The record does not reflect why this foreclosure did not take place, but it was likely impacted by the COVID-19 pandemic, or a related moratorium on foreclosures as discussed below.

law because SLS had not shown, as a matter of undisputed material fact, that the SOL was effectively reset or abandoned. *See id.* at 8, 12, 18-19. Specifically, the Court held that because SLS could not show as a matter of undisputed material fact that it was entitled to a tolling of the statute of limitations for certain bankruptcy-related stays, SLS could not meet its burden—as the moving party— to show that the statute of limitations for foreclosure had not expired. *See id.* at 16-19. But the Court did not then consider whether Counter-Defendants were instead entitled to summary judgment on that same claim. Now, because the Court finds that the same defects which precluded summary judgment in SLS's favor also preclude SLS from meeting its burden at trial on that same claim, the Court GRANTS summary judgment for Counter-Defendants.

## II.

## LEGAL STANDARD

"Rule 56(f) provides that after a district court gives notice and time for the parties to respond, it may 'consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.'" *Sutton v. Smith*, No. 23-60393, 2024 WL 65433, at *2 (5th Cir. Jan. 5, 2024) (citing FED. R. CIV. P. 56(f)(3)), *cert. denied*, 145 S. Ct. 1072, 220 L. Ed. 2d 392 (2025), *reh'g denied*, 145 S. Ct. 1888, 221 L. Ed. 2d 576 (2025). Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotation marks omitted). To determine

whether a genuine dispute exists for trial, the court must view all evidence in the light most favorable to the non-movant. *See Chaplin v. Nations Credit Corp.*, 307 F.3d 368, 371–72 (5th Cir. 2002).

If the non-movant bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. *Latimer v. SmithKline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). Rather, the movant may satisfy its burden by pointing to the absence of evidence to support the non-movant's case. *Id.*; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Once the movant has met its burden, the burden shifts to the non-movant, who must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' . . . or by only a 'scintilla' of evidence." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) (other citations omitted). A non-moving party with the burden of proof must "identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim," *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (citation omitted), and "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita*, 475 U.S. at 587 (emphasis in original) (quoting FED. R. CIV. P. 56(e)). Finally, the evidence that any party proffers "must be competent and admissible at trial." *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

## III.

## ANALYSIS

*A.  SLS's Argument Raised in Response to the 56(f) Notice is Barred by the Doctrine of Quasi- Estoppel*

"Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken. The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit." *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000). As an equitable remedy, quasi-estoppel "prevents a party from repudiating an act or assertion if it would harm another who reasonably relied on the act or assertion." *Cook Composites, Inc. v. Westlake Styrene Corp.*, 15 S.W.3d 124, 136 (Tex. App.—Houston [14th Dist.] 2000, no pet.). "Unlike equitable estoppel, quasi-estoppel does not require a showing of a false representation or detrimental reliance." *Lopez*, 22 S.W.3d at 864.

In response to this Court's 56(f) Notice, SLS raises for the first time an argument that the original 2015 notice of default ("2015 Default Notice"), which was sent by SLS's predecessor to Daugherty, was defective. Specifically, SLS claims that because the 2015 Default Notice did not *expressly* state that failure to cure the default "would result in acceleration," it was insufficient to meet notice requirements set forth in the applicable deed of trust.[2] Doc. 102, Resp. Notice ¶¶ 8-12. As the argument goes, because the 2015 Default Notice was defective, so too was the subsequent acceleration in May 2015, meaning the statute of limitations did not start running until the next notice of default, in 2021. *Id.* ¶ 4.

---

[2] The 2015 Default Notice instead states that failure to cure "will result in our election to exercise our right to foreclose on your property" and that "[u]pon acceleration" Daugherty's obligation would be immediately due. Doc. 102, Resp. Notice ¶ 9.

With this new argument, SLS contradicts its predecessors' and its own actions throughout the past ten years. SLS and its predecessors have consistently maintained the position that the 2015 Default Notice was valid and acted on it. Based on the 2015 Default Notice and subsequent acceleration, Ditech attempted to initiate a foreclosure sale of the Property in December 2018. *See* Doc. 88, Resp., Ex. 2. Also based on the 2015 Default Notice and subsequent acceleration, SLS attempted to initiate a foreclosure sale of the Property in April 2020. *See id.*, Ex. 5. Then in April 2021, SLS *rescinded* acceleration—again acknowledging the earlier effective acceleration. Doc. 80-1, App. Mot., Ex. C-6, 143.

SLS also maintained the position that the 2015 Default Notice was valid throughout this litigation. In its motion for summary judgment brief, SLS argued that per the 2015 Default Notice and subsequent notice of acceleration, "the maturity of the loan was accelerated" on May 15, 2015. Doc. 79, Br. Mot. ¶ 8. SLS's trial brief, filed only *one week* prior to SLS's new argument that the 2015 Default Notice was invalid, likewise states that per the 2015 Default Notice, "the balance of the debt was accelerated on May 15, 2015." Doc. 99, Trial Br. ¶ 3.

But SLS, after "re-examin[ing] the events of 2015" now asserts that the 2015 Default Notice was legally deficient from the offset. Doc. 102, Resp. Notice ¶ 2. In other words, to avoid Texas' four-year statute of limitations, now SLS seeks to abandon its prior position that the loan was accelerated. But SLS cannot "assert, to [Counter-Defendants'] disadvantage a right inconsistent with a position previously taken." *See Lopez*, 22 S.W.3d at 864. Particularly where SLS has repeatedly "acquiesced" that the Alpha Loan was accelerated in 2015 and has itself sought foreclosure based on that acceleration. *See id.* SLS effectively claims that in 2020, it moved for foreclosure on a loan

that was not yet accelerated—which it plainly cannot do under Texas law—but then seeks to benefit from the claimed lack of acceleration now to avoid the statute of limitations.

It makes no difference if SLS was truly unaware of the claimed defect in the 2015 Default Notice, because "quasi-estoppel does not require a showing of a false representation." *Id.* Nor does quasi-estoppel require that Counter-Defendants actually relied on SLS's position to their detriment. *See id.*

Because it would be unconscionable for SLS to, on the eve of trial, change its long-held position on the 2015 Default Notice to avoid the statute of limitations, the Court will not consider those arguments further. *See id.* The Court now addresses the arguments SLS asserted at summary judgment and in its Trial Brief.

B. *SLS's Foreclosure Action is Time-Barred Beyond Reasonable Dispute of Material Fact*

SLS appears to have met its prima facie case for non-judicial foreclosure.[3] The Alpha Note creates a valid debt, that debt was secured by a deed of trust that encumbers the Property, Daugherty defaulted on that debt, and Ocwen served proper notice of default and acceleration on Daugherty at that time. Doc. 79, Br. Mot. ¶ 62. However, SLS's foreclosure action cannot survive summary judgment if based on undisputed material fact, it is time-barred by the applicable statute of limitations.

---

[3] "In Texas, to foreclose under a security instrument with a power of sale, the lender is required to show that: (1) a debt exists; (2) the debt is secured by a lien created under Texas law; (3) the borrower is in default under the note and security instrument; and (4) the borrower has been properly served with notice of default and acceleration." *Wells Fargo Bank, Nat'l Ass'n as Tr. for Option One Mortg. Loan Tr., 2007-5, Asset-Backed Certificates, Series 2007-5 v. Pierce*, No. 3:22-CV-2139-E, 2024 WL 4008771, at *4 (N.D. Tex. Aug. 12, 2024) (Horan, Mag. J.) (citation omitted), *report and recommendation adopted*, No. 3:22-CV-2139-E, 2024 WL 4009947 (N.D. Tex. Aug. 29, 2024) (Brown, J.).

In Texas, a mortgagee seeking to foreclose on a mortgage must do so within four years of the date on which the foreclosure action accrued—normally the date on which the note matured or was accelerated. Tex. Civ. Prac. & Rem. Code § 16.035(a); *see HSBC Bank USA, N.A. as Tr. for Merrill Lynch Mortg. Loan v. Crum*, 907 F.3d 199, 203 (5th Cir. 2018). "When this four-year period expires, the real-property lien and the power of sale to enforce the lien become void." *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 567 (Tex. 2001) (citing Tex. Civ. Prac. & Rem. Code § 16.035(d)). "Effective acceleration requires two acts: (1) a notice of intent to accelerate, and (2) a notice of acceleration." *Id.* at 566 (citation omitted).

The Alpha Note was first accelerated on May 15, 2015, when SLS's predecessor in interest, then Ocwen, sent Daugherty a notice of acceleration (preceded by the 2015 Default Notice). *See* Doc. 79, Br. Mot. ¶ 8; Doc. 88, Resp., 3. Thus, absent intervening events, the foreclosure action was time-barred as of May 15, 2019. *See Days Inn*, 2014 WL 956105, at *5. To avoid summary judgment, SLS must show that despite the statute of limitations, there is a genuine dispute of material fact that its action is not time-barred. *See Provident Life & Accident Ins. Co.*, 274 F.3d at 991.

To argue that the four-year period has not run, SLS pointed to several "clock-restarters" and "clock-pausers" in its brief supporting its summary judgment motion. Specifically, SLS argued that the statute of limitations clock reset at various points when the loan's accelerated status was rescinded (or "abandoned"). SLS also argued that the clock paused during a number of events between 2015 and 2024 that effectively tolled the statute of limitations. Several "restarts" and "pauses" attributed to equitable tolling, abandonment, or a combination of the two, would thereby have extended the applicable statute of limitations and made SLS's foreclosure action timely. SLS repeats those same arguments in its Trial Brief. *See* Doc. 99, Trial Br., 4-11.

Now, the Court reexamines SLS's proffered sources of "restarts" and "pauses." The issues can be simplified as follows: the clock initially started on May 15, 2015. Without intervening circumstances, it would have expired on May 15, 2019. Within the four years of that point, is there a genuine dispute of material fact that its predecessors in interest reset the clock by abandoning acceleration? And if not, is there a genuine dispute of material fact that there were enough pauses to make it to April 15, 2021—the next point at which the clock could arguably have restarted?[4]

1.  **As a matter of undisputed material fact, SLS's Predecessor did not abandon acceleration prior to May 15, 2019**

"[I]f foreclosure was triggered by accelerating a lien . . . , acceleration can be abandoned." *Jorrie v. Bank of N.Y. Mellon Tr. Co.*, N.A., 740 Fed. App'x 809, 813 (5th Cir. 2018). "Abandonment resets the statute of limitations clock by restoring the contract to its original condition and restoring the note's original maturity date." *Id.* (internal quotation marks omitted). "Even when a noteholder has accelerated a note upon default, the holder can abandon acceleration if the holder continues to accept payments without exacting any remedies available to it upon declared maturity." *Wolf*, 44 S.W.3d at 566–67 (citations omitted); *see City Nat'l Bank of Corpus Christi v. Pope*, 260 S.W. 903, 905 (Tex. App.—San Antonio 1924, no writ) (abandoning acceleration where the noteholder accepted a delinquent borrower's irregular payments and withheld affirmative action "such as placing the note in the hands of attorneys for collection, or bringing suit thereon").

According to SLS, on February 16, 2016, less than a year after the initial acceleration date, Daugherty made a payment of $10,223.74. SLS contends that Ocwen, its predecessor in interest,

---

[4] The Court finds April 15, 2021, to be the earliest undisputed date of abandonment, when SLS sent a notice of rescission. Bryant did not dispute whether the notice was sent or if it constituted abandonment and conceded that a subsequent May 21, 2021, notice of default constituted abandonment. *See* Doc. 88, Resp., 1–2.

accepted this payment, thereby rescinding acceleration, restoring the original maturity date, and resetting the applicable statute of limitations. Doc. 79, Br. Mot. ¶ 52. If abandonment took place in 2016, tolling would not be necessary, as it occurred well before the initial May 2019 deadline. In support of this supposition, SLS provided a "Customer Account Activity Statement" which purportedly shows the Alpha Loan's payment history from February 2016 through November 2019. *See* Doc. 80, App., Ex. B-11, 69–88. The document reflects a $10,223.74 payment received and credited to the Alpha Loan on February 23, 2016. *See id.* at 88.

Though SLS may have established that payment was made, evidence of payment is not alone a sufficient basis for abandonment. *Wolf* requires both the acceptance of payment and that the noteholder stop "exacting any remedies available to it upon declared maturity." *Wolf*, 44 S.W.3d at 566–67. Thus, if a noteholder continues to attempt collections, or institutes foreclosure proceedings as if the loan were still accelerated, a payment received will not constitute abandonment. *See Pope*, 260 S.W. at 905 (finding a noteholder does not abandon acceleration if it continues to engage in "affirmative action" or exacts "the penalties available to it in case of declared maturity"). Here, the record is clear that despite Daugherty's purported payment in 2016, and no record of any new notice of default or acceleration, Ditech attempted to proceed with foreclosure in December 2018, and SLS attempted to proceed with foreclosure in April 2020. *See* Doc. 88, Resp., Exs. 2 & 5. Because SLS and its predecessors-in-interest continued to engage in affirmative efforts to collect on the defaulted Alpha Note, despite no evidence of a new notice of default or acceleration, the record reflects no reasonable dispute of material fact that acceleration was not abandoned in 2016. The clock therefore did not reset to prevent SLS's foreclosure action from becoming time-barred on May 15, 2019.

-12-

2.  <u>As a matter of undisputed material fact, the statute of limitations could not have been sufficiently tolled to reach the next conceivable date of abandonment</u>

      i.  *The Alpha Note's earliest conceivable date of abandonment was April 15, 2021.*

If Ocwen did not abandon acceleration in February 2016, the next conceivable date of abandonment was when SLS served a Notice of Rescission of Acceleration of Loan Maturity (the "Notice of Rescission") on the Property on April 15, 2021. Doc. 79, Br. Mot. ¶ 53. A lender may abandon acceleration "by sending a written notice of rescission through certified mail." *PHH Mortg. Corp. v. Aston as Tr. for Polo Meadow Tr.*, No. 01-21-00057-CV, 2022 WL 3363196, at *3 (Tex. App.—Houston [1st Dist.] Aug. 16, 2022, pet. denied). The Court finds that as a matter of undisputed fact, the Notice of Rescission would have effectively abandoned acceleration on April 15, 2021. However, this date is irrelevant if the foreclosure statute of limitations had already expired before that time.

      ii.  *SLS is not entitled to sufficient tolling to maintain a ripe foreclosure action.*

Ocwen first accelerated the Alpha Note on May 15, 2015, when it sent Daugherty a notice of acceleration. *See* Doc. 79, Br. Mot. ¶ 8; Doc. 88, Resp., 3. Absent intervening events, the foreclosure action would thus have been time-barred as of May 15, 2019—701 days before SLS's Notice of Rescission.

Equitable tolling doctrine provides that "[w]here a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the time during which he is thus prevented should not be counted against him in determining whether limitations have barred his right." *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 157 (Tex. 1991) (citations and internal quotation marks omitted). SLS seeks broad application of this doctrine, identifying various sources of purported tolling of the statute of limitations between May 15, 2015, and April 15, 2021:

- First, on May 29, 2015, 14 days after initial acceleration, in connection with a Presidential major disaster declaration, the Federal Emergency Management Agency issued a moratorium in several Texas counties (the "FEMA Moratorium"), including Dallas County, where the Property was located. According to SLS, the FEMA Moratorium prohibited Ocwen from initiating foreclosure on the Property for 91 days, until the hold was lifted on August 28, 2015. Doc. 79, Br. Mot. ¶ 41.

- Second, on two separate occasions, Flewellen obtained temporary restraining orders, preventing Ditech from initiating foreclosure proceedings. The first TRO was entered on November 30, 2018, and was extended up to January 2, 2019, thereby in effect for a total of 34 days. Doc. 79, Br. Mot. ¶ 14; Order Extending TRO, *Sherry Flewellen v. Ditech Fin, LLC*, No. DC-18-17938 (298th Dist. Ct., Dallas County, Tex. Dec. 13, 2018). The second TRO was entered on June 4, 2019, and expired on June 18, 2019, for a total of 14 days. Doc. 80, App., Ex. C-5, 140. Together, the two TROs precluded SLS's predecessor from initiating foreclosure on the Property for a total of 48 days. Doc. 79, Br. Mot. ¶ 43.

- Third, Ditech filed for Chapter 11 Bankruptcy on February 11, 2019, resulting in a bankruptcy stay (the "Bankruptcy Stay"). According to SLS, the Bankruptcy Stay precluded Ditech from foreclosing on the Property until they came out of bankruptcy on December 13, 2019, totaling 305 days (and at which point SLS took possession of the Alpha Note). Doc. 79, Br. Mot. ¶¶ 44–45. Alternatively, SLS claims that a related federal district court stay order (the "District Court Stay") issued by then-Chief Judge Barbara M. G. Lynn in the second Flewellen action also prohibited

Ditech from foreclosing on the Property due to the pending bankruptcy. *Id.* ¶ 44. Judge Lynn entered the District Court Stay on June 21, 2019. *Id.* Ditech and Flewellen voluntarily nonsuited the case on December 10, 2019. *Id.* The District Court stay was thus in effect for 172 days. *Id.* ¶ 45.

- Fourth, the Coronavirus Aid, Relief, and Economic Security Act prevented foreclosure on the Property from March 18, 2020, to July 31, 2021, for a total of 500 days (the "CARES Act Moratorium"). *See* Doc. 80, App. Mot., Ex. L, 294, 323.

As with the MSJ Order, the Court will not analyze each basis for tolling individually because the Court's findings regarding the Bankruptcy Stay and District Court Stay are dispositive. Even assuming, as SLS claims, that the FEMA Moratorium prevented foreclosure and thereby tolled the statute of limitations 91 days, and that the TROs likewise tolled the statute of limitations 48 days, without tolling attributed to either the Bankruptcy Stay or the District Court Stay, the statute of limitations would have expired on *October 1, 2019*, months before the CARES Act Moratorium took effect.[5] If, as a matter of undisputed material fact, neither bankruptcy-related stay precluded SLS's predecessor from foreclosing on the Property, then SLS is time-barred from foreclosure, and Counter-Defendants are entitled to judgment.

"The automatic stay of the Bankruptcy Code extends only to actions "'against the debtor.'" *Matter of U.S. Abatement Corp.*, 39 F.3d 563, 568 (5th Cir. 1994) (citing 11 U.S.C. § 362(a)). Claims asserted by a debtor are not subject to the automatic stay because they are not actions "against the debtor." *First Wis. Nat'l Bank of Milwaukee v. Grandlich Dev. Corp.*, 565 F.2d 879, 880 (5th Cir. 1978);

---

[5] The October 1, 2019, expiration date assumes acceleration started on May 15, 2015, with 91 days of tolling during the FEMA Moratorium and 48 days of tolling for the two TROs.

accord *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1205 (3d Cir. 1991); *Martin–Trigona v. Champion Fed. Sav. & Loan*, 892 F.2d 575, 577 (7th Cir. 1989). SLS claims that Ditech was precluded from proceeding with foreclosure of the Property for 305 days due to Ditech's own bankruptcy. *See* Doc. 79, Br. Mot. ¶¶ 44–45. But SLS repeatedly fails to explain how or present evidence that, in light of the Fifth Circuit's precedent and § 362(a) itself, the Bankruptcy Stay prevented Ditech from foreclosing on the Property. *See U.S. Abatement Corp.*, 39 F.3d at 568. Moreover, the Bankruptcy Stay Order expressly permitted Ditech to continue engaging "in nonperforming loan servicing activities with respect to Agency Loans, including . . . to conduct foreclosures . . . ." Doc. 80-1, App. Mot., Ex. G, 253. Thus, the Bankruptcy Stay, as a matter of undisputed material fact, did not prevent SLS's predecessor from engaging in foreclosure and cannot form a basis for equitable tolling.

Alternatively, SLS claims Ditech was precluded from foreclosing on the Property for 172 days due the District Court Stay, Doc. 79, Br. Mot. ¶ 45; Doc. 99, Trial Br., 3, which Judge Lynn entered "pursuant to" the Bankruptcy Stay, Doc. 80-1, App. Mot., Ex. H, 280. However, SLS provides no basis to suggest that the District Court Stay was any more restrictive of Ditech's ability to foreclose than the Bankruptcy Stay—which expressly permitted Ditech to continue its ordinary mortgage servicing business, including Ditech's ongoing efforts "to conduct foreclosures." *Id.*, Ex. G., 252-53.

To further explain why SLS cannot rely on the District Court Stay, it is necessary to review in more detail the Bankruptcy Stay on which the District Court Stay was based. Along with permitting Ditech to conduct foreclosures, the Bankruptcy Stay permitted certain claims brought *against* Ditech (the debtor) to continue to enable third parties to "assert . . . claims, cross-claims, third-party claims, and counter-claims related to judicial and non-judicial foreclosure [actions] *brought*

*by* [Ditech] to the limited extent such claims" were to enjoin or preclude relief sought by Ditech in those same actions. *Id.* at 253, 260 (emphasis added). Thus, the Bankruptcy Stay expressly presumed that Ditech's foreclosure actions would proceed and with that understanding also permitted certain claims brought against Ditech if related to its foreclosure efforts. *See id.* Judge Lynn plainly adopted that same framework with the District Court Stay, when she implied that Flewellen's wrongful foreclosure claim was not covered by the stay either and could continue upon request. *See id.*, Ex. H, 280. At no point does the District Court Order discuss *Ditech's* ability to attempt foreclosure or otherwise imply that Ditech could not have brought a counterclaim seeking foreclosure. Nor does SLS identify any evidence suggesting that Ditech was in fact precluded from bringing a foreclosure action at that time. Thus, the District Court Stay, as a matter of undisputed material fact, did not prevent SLS's predecessor from engaging in foreclosure and cannot form a basis for equitable tolling.

Even assuming SLS's other tolling arguments are correct, the statute of limitations would have expired in October 2019. Therefore, as a matter of undisputed material fact, SLS's Foreclosure Claim is barred by the applicable statute of limitations.

## IV.

## CONCLUSION

For the reasons discussed above, and pursuant its authority under Federal Rule of Civil Procedure 56(f), the Court **GRANTS** summary judgment for Counter-Defendants on SLS's Foreclosure Claim. It is therefore **ORDERED**, **ADJUDGED**, and **DECREED** that SLS take nothing from Counter-Defendants on its Foreclosure Claim. This is a **FINAL ORDER AND JUDGMENT** that disposes of all claims and controversies between SLS and Bryant.

The sole cause of action remaining in this action is SLS's claim against Daugherty for breach of contract. *See* Doc. 64, Third-Party Compl. ¶¶ 16-18. Daugherty was served on September 12, 2024, and failed to answer or otherwise respond to SLS's Third-Party Complaint. Doc. 75, Mot. Default J. ¶¶ 3, 5. SLS requested the clerk to enter default against Daugherty. Doc. 74, Request. The clerk entered the default. Doc. 76, Entry Default. Accordingly, the Court **ORDERS** SLS to move for default judgment against Daugherty on its remaining claim for breach of contract within 60 days of this Memorandum Opinion and Order.

      SO ORDERED.

      SIGNED: October 24, 2025.

JANE J. BOYLE
SENIOR UNITED STATES DISTRICT JUDGE